**WILMA MARSH-MONSANTO, Appellant/Plaintiff**
**v.**
**WILLIAM CLARENBACH (ESTATE OF WILLIAM CLARENBACH),**
**ET AL., Appellees/Defendants**

S. Ct. Civil No. 2014-0075

Supreme Court of the Virgin Islands

February 10, 2017

368

DOLACE MCLEAN, ESQ., Visions Law Firm, St. Thomas, USVI, *For Appellant.*

MATTHEW J. DUENSING, ESQ., Duensing, Casner & Fitzsimmons, St. Thomas, USVI; W. MARK HILLSMAN, ESQ., Law Offices of James L. Hymes, III, P.C., St. Thomas, USVI, *For Appellees.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice. SWAN, Associate Justice, dissenting.

## OPINION OF THE COURT

(February 10, 2017)

CABRET, *Associate Justice.* Wilma Marsh-Monsanto appeals a Superior Court order dismissing her action to quiet title to certain real property on St. John and finding that all defendants claiming title to that property hold valid title. Because her claims are barred by the statute of limitations, we affirm the Superior Court's entry of summary judgment dismissing Marsh-Monsanto's claims. However, even though every issue Marsh-Monsanto raises on appeal is waived under this Court's rules, we nonetheless reverse the Superior Court's entry of summary judgment adjudicating chain of title to the disputed property because the Superior Court committed plain error by addressing that issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As the result of an adjudication entered by the United States District Court of the Virgin Islands in 1963, William Henry Marsh inherited the

205-acre tract of real property designated as Parcel No. 6 in Estate Carolina on St. John. Of the 205 acres, Marsh subdivided 102 acres of Parcel No. 6 into several smaller parcels: Nos. 6-1 (5.26 acres); 6-2 (5.08 acres); 6-3 (86.4 acres); and 6-4 (5 acres); leaving roughly 103 acres in Parcel No. 6.

Marsh sold Parcel No. 6-3 to William G. Clarenbach and Herbert S. McConnell on January 26, 1968, and after Marsh died on April 2, 1971, his estate deemed the mortgage on the property satisfied in 1975. Clarenbach and McConnell later conveyed all of Parcel No. 6-3 to Estate Carolina Corporation by quitclaim deed on June 8, 1973. The remaining 103 acres of Parcel No. 6 went to Marsh's widow and 11 children as tenants in common, among them Marsh-Monsanto.

In March 1982, the widow and children divided their inheritance through a series of partition deeds, among them a deed recorded on April 6, 1982, describing the portion of Parcel No. 6 being partitioned as "Remainder of Parcel No. 6 Estate Carolina (Composite Parcel No. 6-U)." The boundaries of this property were set out in a survey map that was based on a 1981 survey map registered with the Virgin Islands Cadastral Office.

On December 10, 1984, Estate Carolina Corporation conveyed 15.92 acres of the 86.4-acre Parcel No. 6-3, described as "Remainder of Parcel 6-3, Estate Carolina," to Mill View Estates Joint Venture. Mill View, which later registered as a land-development company on May 15, 1985, then subdivided its 15.92-acre parcel into 31 separate parcels. Mill View sold these parcels in 1986 and 1988, and many of these parcels were in turn sold to other people.

Claiming that the 15.92-acre "Remainder of Parcel 6-3" that Estate Carolina Corporation sold to Mill View in 1984 was actually the "Composite Parcel No. 6-U" that was the subject of the 1982 partition deed, Marsh-Monsanto filed a *pro se* complaint in the Superior Court on December 1, 2004, against Mill View, Estate Carolina Corporation, and several of the people who purchased property from Mill View. Marsh-Monsanto's complaint stated that she sought "a determination of her fee simple title in this action as of March 31, 1982." Despite alleging that she held title to the property at issue as tenants in common with her ten siblings and mother, Marsh-Monsanto did not name these individuals as co-plaintiffs.

370

Marsh-Monsanto amended her complaint three times to add more defendants to the action, but neither her siblings nor her mother were joined as parties. In her third amended complaint, Marsh-Monsanto named, among others, Ralph and Nina Fette, Michael Kolb, Eileen Victor, and Toni Lacer as defendants, all of whom had bought parcels created by Mill View. Although not named as defendants in previous iterations of Marsh-Monsanto's complaint, Ralph Fette and Nina Fette — among other defendants — answered Marsh-Monsanto's second amended complaint on December 27, 2005, and counterclaimed for slander of title and misuse of civil process. Neither Kolb nor Victor answered Marsh-Monsanto's complaint, and although Lacer filed an answer on March 7, 2012, that answer did not contain a counterclaim against Marsh-Monsanto. Marsh-Monsanto attempted to add actions for trespass, ejectment, fraudulent transfer, and compensatory and punitive damages in a fourth amended complaint, but the Superior Court struck that pleading.

Over the next several years, the parties filed a number of motions without any action from the Superior Court. Among these was a motion for summary judgment, which Kolb and Victor filed on September 18, 2013. That motion was later joined by a number of the other defendants. In that motion, Kolb and Victor argued that Marsh-Monsanto had no interest in their property because it was created from Parcel No. 6-3, which Marsh sold to Clarenbach and McConnell before his death, preventing Marsh-Monsanto and her siblings from inheriting the property. The motion also argued that the statute of limitations barred the action because more than 20 years had passed since Marsh sold the property in 1968, see V.I. CODE ANN. tit. 5, § 31(1)(A), and that in any case they were bona fide good-faith purchasers of the property. Along with their motion, Kolb and Victor attached the 1968 warranty deed transferring Parcel No. 6-3 to Clarenbach and McConnell, the mortgage that was deemed satisfied during the adjudication of Marsh's estate, the 1973 quitclaim deed transferring the property to Estate Carolina Corporation, the 1984 warranty deed transferring the property to Mill View, and the numerous deeds transferring subdivisions of Parcel No. 6-3 to the various defendants in this case.

On October 11, 2013, Ralph Fette and Nina Fette filed their own summary judgment motion, arguing that an examination of the deeds and survey maps by a professional land surveyor determined that the property Marsh-Monsanto was claiming title to was actually part of Parcel No. 6-3. Along with the motion, the Fettes included the surveyor's report con-

cluding that "Parcel No. 6-U is wholly located within and a part of Parcel No. 6-3."

The Superior Court held a hearing on these pending motions on November 19, 2013. During the hearing, the Superior Court noted that Marsh-Monsanto never served many of the 78 named defendants in the case. The Superior Court also struck the fourth amended complaint without objection from Marsh-Monsanto, holding that adding new claims nine years into the litigation would prejudice the defendants. The court then heard oral arguments on the Fettes' motion for summary judgment, including argument from Marsh-Monsanto, who had yet to file written oppositions to either of the summary judgment motions. Following the hearing, the Superior Court issued a November 20, 2013 order striking the fourth amended complaint and ordering Marsh-Monsanto to show cause as to why the unserved defendants should not be dismissed from the action. The Superior Court also ordered Marsh-Monsanto to file any documents and arguments opposing summary judgment within a month, and to show cause as to why any decision on summary judgment should not apply to all defendants in the case. According to the docket, Marsh-Monsanto filed her opposition to summary judgment on December 23, 2013.

The Superior Court held another hearing on the motions on October 2, 2014. At the outset of this hearing, Kolb, Victor, and Lacer requested that the Superior Court "enter some sort of a declaratory order that could be recorded with respect to all the affected parcels" of disputed property because "all of the affected parcels need to have this matter clarified." The Superior Court then dismissed a number of defendants due to Marsh-Monsanto's failure to serve them with process, and entered default against several others for their failure to appear despite service of process.[1] The Superior Court also denied Marsh-Monsanto's motions to serve by

---

[1] The defendants Marsh-Monsanto failed to serve were Pamela Fette, John Gagliatti, Wendy Hoist Gagliatti, Mark Adler, Debora Lament, William Horton, Jr., Virginia Horton, Mark Van Kerkhove, Muskoka Moons, Inc., David Garant, the Rene Servant Trust, Michael Terry, Jesse Terry, Raymond McNally, Sandra McNally, Kathleen Ann Toole Joseph, Marc Blazar, Robert H. Redinger, Pamela G. Redinger, Hilarie Hackendahl, Jason Oliver Hackendahl, Riverbank Properties, LLC, Tanya Mattison, Harold Bland and Florence Bland, the Estate Carolina Corporation, the Carolina Corp., the Estate of Priscilla Clarenbach, the Estate of William Clarenbach, the Estate of William McConnell, Anne Gordon, Paul Gordon, Loretta Kaber, Jerry Kaber, Jacqueline Sulek, Phillip Nixon, Mani Menon, Shareen Menon, the Menon Realty Trust, Larry McClain, Patricia McClain, John Van Kerkhove, and Blanche Goggins. The defendants that never appeared were the Marie Therese Servant Estate, Frank

publication, holding that she failed to comply with 5 V.I.C. § 112 because she did not demonstrate that she had exercised due diligence in attempting to locate the defendants. *See* 5 V.I.C. § 112(a) ("When service of the summons cannot be made . . . and the defendant after due diligence cannot be found within the Virgin Islands . . . the court shall grant an order that the service be made by publication of the summons.").

The Superior Court next allowed the parties to present argument and evidence on the summary judgment motions. Without objection, Marsh-Monsanto called Wayne Callwood, the head of the Virgin Islands Cadastral Office, as an expert witness. Callwood testified that "Parcel No. 6-U came out of Parcel No. 6-3" in 1980, and that the dispute in this case was caused by the surveyor's failure to make a notation indicating that Parcel No. 6-U replaced a parcel previously marked as Remainder of Parcel No. 6-3. Marsh-Monsanto asked Callwood about this repeatedly, prompting the Superior Court to state that Callwood "already testified that 6-3 came out of 6, and 6-U came out of 6-3," to which Marsh-Monsanto replied, "[t]hat's his testimony, but I don't agree with that."

Marsh-Monsanto also presented evidence that she and her family had been paying property taxes on Parcel No. 6-U at least as far back as 1983 and 1985, but it is unclear for how much or for how long. No evidence was presented indicating whether Estate Carolina Corporation, Mill View Estates, or any other defendant paid taxes on the same property during the same time.

The Superior Court announced its ruling from the bench during an October 17, 2014 hearing, granting summary judgment to the defendants. In doing so, the Superior Court held that Marsh-Monsanto failed to create a genuine issue of material fact because she failed to submit any evidence that disputed the expert report and chain of title submitted by the defendants at summary judgment. The Superior Court also held that the action was barred by the statute of limitations because Marsh-Monsanto stated during the October 2, 2014 hearing that she was aware of issues with the property as early as 1982, so the complaint filed in 2004 was two years too late. Finally, the Superior Court granted Kolb, Victor, and Lacer's oral request for declaratory relief, declaring that "all persons" who took title to property from Mill View hold valid title to that property.

---

Gordon Associates, Star Property Company, Mill View Estates Joint Venture, Frank Gordon, Verne Callwood, Roy Martin, and Kala Mohandes.

The Superior Court entered an order to this effect on October 21, 2014, clarifying that it was granting summary judgment to all the defendants that remained in the case. The Superior Court specifically adjudicated chain of title to the disputed property in its order, stating that "the real property which [Marsh-Monsanto] describes as Remainder of Parcel 6 (composite Parcel 6-U) . . . is the same real property more properly and legally described as Remainder of Parcel 6-3." The order then stated that the property Marsh-Monsanto described as "Remainder of Parcel 6-3 . . . is a portion of Parcel 6-3 Estate Carolina, St. John . . . which . . . Will Marsh duly conveyed to William Clarenbach and Herbert McConnell." In the next two paragraphs, the court states that Parcel 6-3 was duly conveyed to Estate Carolina Corporation in fee simple, and that Estate Carolina Corporation duly conveyed Remainder of Parcel 6-3 to Mill View Estates Joint Venture. From these findings, the Superior Court concluded that "all defendants" claiming title to lots subdivided from Parcel 6-3 "have valid and enforceable title to their respective parcels." Marsh-Monsanto filed a timely notice of appeal on November 10, 2014.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The Superior Court's October 21, 2014 order granting summary judgment to the appellees was a final order within the meaning of section 32(a), and therefore we have jurisdiction over this appeal. *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 777 (V.I. 2015) (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014)).

## III. DISCUSSION

On appeal, Marsh-Monsanto, now represented by counsel, argues that the Superior Court erred in holding that the statute of limitations barred her action, that there were no genuine issues of material fact that would preclude summary judgment, and in denying her motions to serve by publication. She also argues that the conveyance of Parcel No. 6-3 from Estate Carolina Corporation to Mill View in 1984 was invalid. We apply plenary review to the Superior Court's grant of summary judgment. *Machado*, 61 V.I. at 379. In doing so, we view all inferences from the evidence in the light most favorable to Marsh-Monsanto, and take her

allegations as true if properly supported by the evidence she submitted in opposition to summary judgment. *Id.* at 379-80. We agree that the statute of limitations bars Marsh-Monsanto's claims, but conclude that, even though Marsh-Monsanto's challenge to the Superior Court's summary judgment ruling is waived, the Superior Court committed plain error by adjudicating the merits of defendants' declaratory judgment request.

## A. Statute of Limitations

██ Marsh-Monsanto argues that the Superior Court erred in holding that she brought this action outside of the 20-year statute of limitations on "[a]ctions for the recovery of real property" under 5 V.I.C. § 31(1)(A). "[T]he statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need investigate to determine whether [she] is entitled to redress." *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 274 (V.I. 2012) (quoting *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985)). When the underlying facts are undisputed, application of the statute of limitations presents a question of law that may be resolved by summary judgment. *See, e.g., Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E.2d 350, 353-55 (N.C. 1985) (affirming summary judgment where undisputed facts demonstrated that the statute of limitations had run); *see generally* 54 C.J.S. *Limitations of Actions* § 437 (2016) (collecting cases).

██ Marsh-Monsanto's argument boils down to a single sentence, stating that she "became aware of Mill View's asserted interest in her property when someone purported to act on behalf of the nonexistent entity [and] recorded the 1984 Warranty Deed on December 11th of that year." But this argument is unsupported by the record. Marsh-Monsanto's complaint, filed on December 1, 2004, sought "a determination of her fee simple title in this action as of March 31, 1982." At the October 2, 2014 hearing, the Superior Court asked Marsh-Monsanto why she included the date March 31, 1982, in her complaint, and she responded that she first noticed bulldozers on the property in 1982. This led the Superior Court to hold that the 20-year statute of limitations on actions involving real property began to run in 1982, barring Marsh-Monsanto's 2004 action. The parties do not dispute that Marsh-Monsanto saw bulldozers on the property in 1982, and Marsh-Monsanto makes no argument on appeal suggesting that the Superior Court erred in accepting her own statement

that she first noticed development on the property in 1982 as being conclusive on this issue. *See Bright v. United Corp.*, 50 V.I. 215, 222 (V.I. 2008) (indicating that the Superior Court may consider the party's admissions in ruling on summary judgment). Accordingly, we find no error in the Superior Court's application of the statute of limitations to the undisputed facts of this case.

 We note that the statute of limitations may be equitably tolled when, "despite the exercise of due diligence, the injury or its cause is not immediately apparent." *Santiago*, 57 V.I. at 273. And, while "it is our policy to give *pro se* litigants greater leeway in dealing with matters of procedure and pleading," *Appleton v. Harrigan*, 61 V.I. 262, 267 (V.I. 2014) (citation and internal quotation marks omitted), Marsh-Monsanto failed to argue before the Superior Court that she was entitled to equitable tolling, and there is nothing in the record suggesting that she is entitled to tolling. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 589 (V.I. 2014) (discussing the requirements of equitable tolling); *Santiago*, 57 V.I. at 273 (same). Even though Marsh-Monsanto is now represented by counsel on appeal, she does not argue that equitable tolling is appropriate in this case, and this Court typically will not "invoke[ ] [our] policy [of leniency for *pro se* litigants] to raise new . . . arguments *sua sponte* on behalf of a *pro se* litigant." *Fleming v. Cruz*, 62 V.I. 702, 722 (V.I. 2015) (Cabret, J., concurring). Therefore, we affirm the Superior Court's holding that the statute of limitations bars this action.[23]

---

[2] We make no determination regarding the property tax payments Marsh-Monsanto made on Parcel No. 6-U, and whether there is any legal or equitable basis for her to recover the taxes she paid for property she did not own.

[3] The dissent objects to our decision to affirm the Superior Court's grant of summary judgment based on the premise that the resolution of Marsh-Monsanto's claims on statute-of-limitations grounds operates as res judicata with respect to the remaining Marsh heirs. But this premise ignores the well-established principle that, absent the existence of an agency between them, tenants in common do not stand in privity with one another for purposes of applying res judicata. *See Anderson v. Manibusan*, 442 F.2d 348, 349 (9th Cir. 1971) ("The heirs may bring an action to quiet title, but one heir who brings such an action may not bind other heirs who were not made parties and were not served with process. A contrary holding would deprive persons of property rights without due process of law."); *Olson v. Harveston*, 158 Ga. App. 65, 276 S.E.2d 54, 57-58 (Ga. Ct. App. 1981) (where one tenant in common acted as an undisclosed principal for the other, judgment against the first tenant in common operated as res judicata in a later action brought by the second tenant in common); *Kirby Lumber Corp. v. S. Lumber Co.*, 145 Tex. 151, 196 S.W.2d 387, 389 (Tex. 1946) ("[T]enants in common do not claim through or under each other, and there is no such privity between

## B. Other Issues Raised on Appeal

Because the Superior Court did not err in holding that the statute of limitations had run on Marsh-Monsanto's cause of action prior to her commencement of proceedings, we do not reach the remaining issues she raises on appeal. But even if we were inclined to reach these issues, we note that Marsh-Monsanto has waived them.

 Marsh-Monsanto argues that the Superior Court erred by denying her motion to serve the defendants by publication under 5 V.I.C. § 112. But aside from citing the statute itself, Marsh-Monsanto makes no substantive argument and cites no authority for the conclusory assertion that she satisfied any of the requirements of section 112, or that the Superior Court erred in denying her motion. *See* V.I.S.CT.R. 22(m) (providing that a party's arguments are waived where they are only

---

them that a judgment for or against one of them, affecting title to land, will bind the other[s].''); *see also* 50 C.J.S. *Judgments* § 1144 (2016) ("As a rule there is no privity between joint tenants or tenants in common with respect to application of the rule of res judicata. Joint tenants or tenants in common do not claim through or under each other, and therefore there is no such privity between them that a judgment for or against one of them affecting the land will bind the other.''); 47 AM. JUR. 2D *Judgments* § 618 (2006) ("The title and interest of cotenants or owners of property, whether their relationship is technically that of joint tenants or of tenants in common, is not derived from or dependent upon the title or ownership of each other, and there is not any agency relationship between cotenants. Because of lack of privity essential to the application of the doctrine of res judicata, a judgment in an action or proceeding to which one or more cotenants are parties, affecting the status, title, or rights in the common property of those who are parties to the suit, will not operate to affect the rights of cotenants not made parties or their privies." (footnotes and citations omitted)); *see generally* RESTATEMENT (SECOND) OF JUDGMENTS § 54 cmts. a-b (1982) (summarizing the rationale behind, and exception to this principle, and collecting cases).

Here, since there is no dispute that Marsh-Monsanto was not acting as an agent of the remaining Marsh heirs, a judgment against her does not affect the ability of the remaining Marsh heirs to adjudicate any interest they may claim in Parcel 6-U. The cases cited by the dissent either deviate from the general principle without explanation, *see Reynolds v. JPMorgan Chase Bank, N.A.*, No. 5:13-CV-440 (MTT), 2014 U.S. Dist. LEXIS 4503 (M.D. Ga. Jan. 14, 2014) (concluding that tenants in common enjoyed "a mutual or successive relationship to the same right" (citing *Smith v. Nasserazad*, 544 S.E.2d 186, 188 (Ga. Ct. App. 2001))), concern an agency relationship between property owners and a homeowners' association, *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1083 (9th Cir. 2003), or simply do not speak to whether a judgment against one tenant in common has a preclusive effect on other tenants in common. *See Franco v. District of Columbia*, 3 A.3d 300, 305 (D.C. Cir. 2010) (concluding that privity did not exist between parties that owned adjacent properties); *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 121 Ohio St. 3d 526, 2009 Ohio 1704, 905 N.E.2d 1210, 1217 (Ohio 2009) (finding privity between a county employee and the employee's director).

"adverted to in a perfunctory manner"). And her brief fails to indicate where in the joint appendix she moved for leave to serve by publication in the Superior Court as required by Supreme Court Rule 22(a)(5).

 In denying Marsh-Monsanto's motion to serve by publication, the Superior Court held that Marsh-Monsanto failed to establish that she exercised due diligence in her efforts to locate the parties she sought to serve by publication, stating that her affidavit in support of the motion did "not describe what those efforts or research is, nor does she set out exactly which defendants she is seeking [to serve] by publication." Marsh-Monsanto fails to make any arguments challenging the Superior Court's findings on due diligence, and she also failed to include the motions to serve by publication in the joint appendix. *See Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 521 n.6 (V.I. 2015) ("[T]his Court is one of review, not first instance.").

 Marsh-Monsanto next argues that the Superior Court erred in granting summary judgment because she presented genuine issues of material fact that a jury must decide, including the issue of "when it was that 'Remainder 6-3' was created" and whether the 1984 warranty deed transferring the property from Estate Carolina Corporation to Mill View Estates Joint Venture was fraudulent.[4] But — despite six pages of argument on this issue — Marsh-Monsanto includes only a single citation to five pages of the joint appendix in her appellate brief. *See* V.I.S.Ct.R. 22(a)(5) ("The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."). This citation to pages 197-201 of the joint appendix, comprising several maps, lacks any explanation of the significance of these documents. *See Madir v. Daniel*, 53 V.I. 623, 635 (V.I. 2010) (indicating that this Court will "not cull the record" to find material that the appellant had a duty to bring to the Court's attention); *Brodhurst v. Frazier*, 57 V.I. 365, 396 (V.I. 2012) (Swan, J., dissenting) ("Even where the record contains facts that

---

[4] The dissent argues that the Superior Court erred in granting summary judgment because the record contains "significant probative evidence" supporting Marsh-Monsanto's claim to Parcel 6-U. The dissent refers specifically to the 1982 deed of partition, a map that depicts Parcel 6-3 and Parcel 6-U as separate properties, tax bills for Parcel 6-U issued to the Marsh family, and a 2003 title and encumbrance statement for Parcel 6-U. Regardless of whether this material evidences a genuine dispute of material fact, the statute of limitations still bars Marsh-Monsanto's claims.

possibly provide support for a non-movant's position, the burden would still be on . . . the non-movant, *not the court*, to cull the record and affirmatively identify genuine issues of material fact sufficient to defeat a motion for summary judgment." (emphasis in original)).

Furthermore, the joint appendix contains nearly 200 pages of documents but gives no indication of when, or if, Marsh-Monsanto submitted these documents to the Superior Court. *See* V.I.S.CT.R. 10(a) ("The original papers and exhibits filed in the Superior Court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the Clerk of the Superior Court shall constitute the record on appeal in all cases."). While it seems that Marsh-Monsanto may have submitted these documents with her opposition to summary judgment, we cannot be sure because her opposition to summary judgment — like the motion for summary judgment itself — is not included in the joint appendix.[5] *See* V.I.S.CT.R. 24(a) ("Appellant shall prepare and file an appendix to the briefs which shall contain all materials designated by all parties and shall include: . . . relevant portions of the trial transcripts, exhibit[s], or other parts of the record referred to in the briefs."). Accordingly, Marsh-Monsanto's challenge to the Superior Court's summary judgment ruling is waived under this Court's rules.

With regard to Marsh-Monsanto's argument that the 1984 transfer of the property to Mill View was fraudulent, she fails to direct us to any evidence of fraud in the summary judgment record. She also argues that this transfer was invalid because Mill View "was not an organization existing under the laws of the Virgin Islands" on the date of the conveyance or the date the deed was recorded. The appellees argue that this issue was not raised before the Superior Court.

▮▮▮▮▮▮ Marsh-Monsanto insists that she did raise this issue before the Superior Court during the October 2, 2014 hearing, when she argued that there needed to be a trial to "find out who [Mill View] sold the land to and how . . . they [got] the land." "[A] party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal." *Percival v. People*, 62 V.I. 477, 486 (V.I. 2015)

---

[5] This Court granted the appellees leave to file a supplemental appendix, but that appendix included only the appellees'

(collecting cases applying Supreme Court Rule 4(h)). Yet even under this liberal standard, this issue is waived since Marsh-Monsanto never argued before the Superior Court that the conveyance of property to Mill View was invalid "because there was no Mill View Joint Venture, and thus no valid grantee in existence to which title could have passed." *See Yusuf v. Hamed*, 59 V.I. 841, 851 n.5 (V.I. 2013) ("[t]o preserve an objection on appeal, a party must object on the specific grounds raised on appeal," and an argument made on different legal grounds is not sufficient); *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 528 n.4 (V.I. 2013) (holding that the failure to properly present an issue at summary judgment resulted in waiver on appeal under Rule 4(h)).

Marsh-Monsanto asserts that even if her challenge to the Mill View land transfer is waived, it is nonetheless an issue affecting substantial rights that this Court should address in the first instance. Aside from making this cursory assertion, however, Marsh-Monsanto presents no substantive argument addressing how this issue affects her substantial rights. And while she relies on *Dennie v. Swanston*, 51 V.I. 163, 169 (V.I. 2009)[6] — where this Court reached an unpreserved issue on appeal in a civil case — that case concerned a denial of due process in a child-custody determination, and Marsh-Monsanto fails to explain how the Superior Court violated her right to due process in this case. Therefore, we are not persuaded to address whether the conveyance to Mill View was valid.

## C. Declaratory Judgment

 Although Marsh-Monsanto's challenge to the Superior Court's summary judgment ruling is waived under our rules, we retain discretion to notice errors that affect substantive rights, even if those errors were not properly presented on appeal. V.I.S.CT.R. 4(h), 22(m). When the Superior Court determined that the statute of limitations barred Marsh-Monsanto's request for an adjudication of title to Parcel 6-U, it became improper for the Superior Court to adjudicate the merits of that claim. *See, e.g., Allie v. Ionata*, 503 So. 2d 1237, 1239-40 (Fla. 1987) ("The expiration of a statute of limitation does not resolve the underlying merits of the consequently

---

[6] We further note that the discussion of waiver in *Dennie* relied on the federal rules and United States Supreme Court case law. This discussion was superseded by the promulgation of Supreme Court Rule 4(h) and our later case law interpreting that rule. *Percival*, 62 V.I. at 485-86.

barred claim in favor of either party; it merely cuts off the remedy of the party who has slept on his rights."); *City of Murphy v. City of Parker*, 932 S.W.2d 479, 481 (Tex. 1996) ("[N]o statute of limitations directly addresses the merits of a claim to which it is interposed as a bar."); *James v. Montoya*, 963 P.2d 993, 995 (Wyo. 1998) ("Statutes of limitation do not discriminate between the just and unjust claim. They operate regardless of the merits."). Nevertheless, prompted by the oral request of Kolb, Victor, and Lacer, the Superior Court entered a declaratory judgment adjudicating chain of title to Parcel 6-U. By doing so, it adjudicated an unpleaded counterclaim and effectively divested the remaining Marsh heirs of their alleged property interest in Parcel 6-U without affording them notice or an opportunity to be heard.

██ We apply a plain error standard of review to determine whether the interests of justice compel us to notice and correct such an error. *See Caribbean Healthways, Inc. v. James*, 59 V.I. 805, 812 n.2 (V.I. 2013) (observing that Supreme Court Rule 4(h)'s "interests of justice" standard is a proxy for plain error review); *McIntosh v. People*, 57 V.I. 669, 683 n.12 (V.I. 2012) (same). For this Court to reverse under a plain error standard of review, four conditions must be met. First, there must be an error; second, the error must be "plain"; third, the error must "affect substantial rights"; and finally, the error must "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013); *see also Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct. 1338, 1343, 194 L. Ed. 2d 444 (2016).

██ ██ "An error is a deviation from a legal rule, and an error is plain if it is clear and obvious." *Malone v. People of the V.I.*, 53 V.I. 408, 417 (V.I. 2010) (citing *United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)); *see also Williams v. People*, 56 V.I. 821, 830-31 (V.I. 2012) (observing that a plain error is "clear and obvious, rather than subject to reasonable dispute" (quoting *United States v. Marcus*, 560 U.S. 258, 262, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010))). Under the Rules of the Superior Court, a defendant that wishes to counterclaim for a declaratory judgment must plead that cause of action in an answer. *See* SUPER. CT. R. 34 ("All claims . . . for relief, except a complaint or a third-party complaint, shall be asserted in an answer as a counterclaim, and not otherwise."). A defendant may not request a declaratory judgment for the first time in a summary judgment motion or

during oral argument on a summary judgment motion. *See Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 (V.I. 2011) ("A claim cannot be raised for the first time on a summary judgment motion — it must be contained in [a pleading]."); *accord Hazelwood v. Tenn. Dep't of Safety*, 322 Fed. Appx. 441, 442 (6th Cir. 2009) (district court did not err by refusing to consider a claim raised at summary judgment that was not pleaded in the complaint); *Gonzalez v. City of Federal Way*, 299 Fed. Appx. 708, 710 (9th Cir. 2008) (same); *Fairbaugh v. Life Ins. Co. of N. Am.*, 737 F. Supp. 2d 68, 87 (D. Conn. 2010) (same).

Contrary to its rules, the Superior Court adjudicated title to Parcel 6-U in favor of "all defendants" based upon an oral request for a declaratory judgment made at the outset of the summary judgment hearing, even though that request had not been pleaded as a counterclaim. Neither Kolb nor Victor answered Marsh-Monsanto's complaint, and Lacer's answer does not purport to counterclaim against Marsh-Monsanto. And although several defendants counterclaimed in response to Marsh-Monsanto's second amended complaint, that counterclaim did not pray for a declaratory judgment or any similar adjudication of title to Parcel 6-U. Consequently, Kolb, Victor, and Lacer's oral request for "some sort of a declaratory order that could be recorded with respect to all the affected parcels" during the summary judgment hearing was the only request for such a declaratory judgment made by any defendant. Since this request was not set forth "in an answer as a counterclaim," SUPER. CT. R. 34, there can be no dispute that the defendants' oral request was insufficient to place the issue before the Superior Court under the Superior Court's rules. Thus, the Superior Court committed a plain error by granting summary judgment on a request that was not properly before it. *Accord Wiggins v. Perry*, 989 So. 2d 419, 431-32 (Miss. Ct. App. 2008) (concluding that the trial judge committed plain error in granting summary judgment on claims not asserted in a plaintiff's complaint); *Dana Commercial Credit Corp. v. Cukjati*, 880 S.W.2d 612, 617 (Mo. Ct. App. 1994) (concluding that the trial court committed plain error by entering summary judgment against a defendant on a claim not pleaded against that defendant); *cf. Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 191 (V.I. 2009) (concluding that the Superior Court committed reversible error by ruling on a motion to dismiss that was not properly before it).

■ ■ ■ In addition to being plain, this error also affects substantial rights. "An error affects substantial rights when it would change the outcome of the proceedings." *Nanton v. People of the V.I.*, 52 V.I. 466, 491 (V.I. 2009); *see also Malone*, 53 V.I. at 417 ("Generally, an error affects substantial rights when it is prejudicial, i.e., it affected the outcome of the [trial] court proceedings." (quoting *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006))). Orders affecting title to real property may affect substantial rights. *See, e.g., The Empire Dist. Elec. Co. v. Coverdell*, 344 S.W.3d 842, 852 (Mo. Ct. App. 2011) (concluding that a judgment depriving a landowner of its rights to certain real property affected the landowner's substantial rights). An error may also affect substantial rights where it would bind a nonparty to the suit. *See, e.g., Tracy Press, Inc. v. Superior Court*, 164 Cal. App. 4th 1290, 80 Cal. Rptr. 3d 464, 469-72 (Cal. Ct. App. 2008). Here, by entering a declaratory judgment in favor of the defendants, the Superior Court ignored the alleged interest held by the remaining Marsh heirs in Parcel 6-U. The purpose of a declaratory judgment action is "to declare rights, status, and other legal relations," 5 V.I.C. § 1261, and it is not possible to do so when all parties having an interest in a property have not been served with notice of the lawsuit. *See Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 527 S.E.2d 40, 44 (N.C. 2000) ("An adjudication that extinguishes property rights without giving the property owner an opportunity to be heard cannot yield a 'valid judgment.'" (quoting *Strickland v. Hughes*, 273 N.C. 481, 160 S.E.2d 313, 316 (N.C. 1968))). The remaining Marsh heirs were neither served by the defendants seeking a declaratory judgment nor joined as parties to the action, and although the record is unclear, it is possible that some of the remaining Marsh heirs might be able to demonstrate genuine disputes of material fact concerning the ownership of Parcel 6-U without being barred by the statute of limitations. But by adjudicating the defendants' interest in the disputed property without such information, the Superior Court may have awarded the defendants a greater property interest than what they were entitled to receive. Thus, there can be no doubt that the outcome of this case would be different if the Superior Court had correctly denied the defendants' oral declaratory judgment request, because the defendants would not have received an order declaring their respective titles to portions of the disputed property to be valid despite the potential existence of evidence to the contrary.

 Because the heirs were not joined as parties, the Superior Court's error has the potential to damage the public reputation of judicial proceedings. Whether an error has such an effect is determined "on a case-specific and fact-intensive basis." *Puckett v. United* States, 556 U.S. 129, 142, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009); *see, e.g., Francis*, 57 V.I. at 223 (an error that deprived a defendant of an opportunity to present a defense affected both the fairness of proceedings and, if uncorrected, may have adversely reflected on the public reputation of judicial proceedings). By entering a declaratory judgment in favor of the defendants, the Superior Court ignored the interests in Parcel 6-U allegedly held by the remaining Marsh heirs. This is significant, as the heirs had no opportunity to defend their alleged interests against the defendants' declaratory judgment request. The Superior Court's error appears to deprive the heirs of their alleged interests in Parcel 6-U without notice and an opportunity to be heard, and therefore has the potential to damage the public reputation of judicial proceedings in general. Consequently, the interests of justice obligate us to reverse all portions of the Superior Court's October 21, 2014 summary judgment order predicated upon the Superior Court's error.

## IV. CONCLUSION

Marsh-Monsanto never disputed that her cause of action accrued in 1982, twenty-two years before she filed her complaint and two years after the applicable statute of limitations had run. Further, every issue Marsh-Monsanto attempts to raise on appeal is waived due to her failure to comply with this Court's rules. Therefore, we affirm the Superior Court's October 21, 2014 order dismissing Marsh-Monsanto's claims on statute-of-limitations grounds. But since the Superior Court committed plain error by ruling on a declaratory judgment request that was not properly before it, we reverse the portion of the October 21, 2014 summary judgment order predicated upon that error.[7]

---

[7] Specifically, we reverse the portion of the October 21, 2014 summary judgment order beginning with the paragraph stating that "Remainder of Parcel 6 (composite Parcel 6-U) . . . is the same real property more properly and legally described as Remainder of Parcel 6-3," and continuing through the paragraph concluding that "all Defendants claiming title to [subdivided lots within Parcel 6-3] . . . have valid and enforceable title to their respective parcels."

SWAN, *Associate Justice*, dissenting.

Although the majority reverses the trial court's declaratory judgment that the defendants were the rightful owners of Parcel 6-U Estate Carolina, it affirms the ruling that Marsh-Monsanto's claim was time-barred because she first noticed bulldozers on the subject property in 1982, more than twenty years before she filed her lawsuit. Because this action should not have proceeded in the absence of the other registered owners of the property — Marsh-Monsanto's siblings — I dissent.

### 1. The Marsh Heirs were Necessary Parties to the Lawsuit.

A March 21, 1982 partition deed exists by and between Genevieve E. Marsh, Florine Fluhler, Wilma Monsanto, Vernon Marsh, Helen Johnson, Egbert Marsh, Sylvia Wade, Ezio Marsh, Ruppert Marsh, May Rose Marsh, Elvis Marsh, and Glenmyrah Marsh, referred to as "Grantors," and Florine Fluhler, Wilma Monsanto, Vernon Marsh, Sylvia Wade, May Rose Marsh, Helen Johnson, Egbert Marsh, Elvis Marsh, Ruppert Marsh, Ezio Marsh, and Glenmyrah Marsh, as tenants in common, referred to as the "Grantees." The partition deed identifies the subject property as follows:

> Remainder of Parcel No. 6 Estate Carolina
> (Composite Parcel No. 6-U)
> No. 1 Coral Bay Quarter, St. John, Virgin Islands
> P.W.D. File No. C9-262-T81.

(JA at 169.)

Importantly, public records of the Virgin Islands both evidence and support the Marsh siblings' ownership of Parcel 6-U. The partition deed was recorded in the Office of the Recorder of Deeds on April 6, 1982, and the accompanying map, which was prepared by the late Rudolph B. Galiber, NSE, Registered Civil Engineer, was filed in the Office of the Public Surveyor on April 1, 1982. Additionally, a Title & Encumbrance Statement dated December 23, 2003 evidences that Parcel 6-U is registered in the names of the eleven Marsh siblings. The Office of the Tax Assessor — and effectively, the Virgin Islands Government — also implicitly recognized that the subject property is owned by the Marsh family because after the recording of the partition deed, it consistently issued tax bills to "Genevieve Marsh & Children" for Parcel 6-U for more than two decades.

385

When Marsh-Monsanto filed the complaint in this case on December 1, 2004, noticeably absent as named plaintiffs were the ten remaining Marsh siblings who are registered owners of Parcel 6-U, and there was no proof that the unnamed siblings had ratified the commencement of the action. Marsh-Monsanto also did not present any evidence that she was authorized to represent any of the other Marsh heirs and the record does not reflect that they were all individually aware of the lawsuit. Inexplicably, however, despite this failure on Marsh-Monsanto's part, and the existence of public records which identified all the Marsh siblings as owners of Parcel 6-U for more than twenty-two years prior to the lawsuit, the Superior Court never ordered that the absent siblings be joined as plaintiffs, defendants, or interveners.

As much as Marsh-Monsanto may have believed that she was advocating on her siblings' behalf, the court made clear that she was the sole plaintiff. The following dialogue ensued between the trial court and Marsh-Monsanto:

> MARSH-MONSANTO: Your Honor, [counsel for the defendants] are being paid handsomely to represent some folks here. I am representing myself and my brothers and sisters.
> THE COURT: You're only representing yourself.
> MARSH-MONSANTO: Okay. I represent myself. But I'm speaking, really, for all of them.
> THE COURT: No, you're representing yourself; that's it.
> MARSH-MONSANTO: Okay. I appreciate that.

(JA at 603-604.)

This exchange was more than an opportunity for the Superior Court to dispel Marsh-Monsanto's understanding that she was representing her siblings' interests during the proceedings; it was the juncture at which the court should have analyzed whether all the grantees in the 1982 partition deed were necessary to the action under Federal Rule of Civil Procedure 19.

FED. R. CIV. P. 19(a)(1)-(2) provides:

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Because clauses (1)(A) and (1)(B) of Rule 19(a) are phrased in the disjunctive, a party whose absence results in any of the problems identified in either subsections (1)(A) or (1)(B) must be joined, if feasible. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3rd Cir. 1993). In the event that joinder will deprive the court of subject matter jurisdiction, the court must then analyze the factors enumerated in Rule 19(b), whereby it determines whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b).

The linchpin of a Rule 19(a)(1)(A) inquiry is "completeness," in that we ask whether the Superior Court could have accorded complete relief to Marsh-Monsanto or the defendants, in the absence of the other Marsh heirs. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007). Under this standard, therefore, "what effect a decision may have on absent parties is immaterial." *Id.* The 1966 Advisory Committee Notes for Rule 19 also explain, "[c]lause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court."

Thus, the question before us under this first subsection of Rule 19(a)(1) is whether the Superior Court could have granted complete relief in a quiet title or ejectment action to the parties that were already before the court, where only one of eleven tenants in common of the subject property was a named party. Here, the trial court could not have rendered a

complete judgment to either Marsh-Monsanto or the defendants. In the absence of persons with a legitimate and material interest in the subject property — specifically, the unnamed Marsh siblings — the court could not have effectively and definitively adjudicated the holders of valid title. *See Prosser v. XTO Energy, Inc.*, No. 2:12-CV-0883, 2013 U.S. Dist. LEXIS 59373 (S.D. Ohio Apr. 25, 2013) ("By adjudicating this case without parties who may have interest in the subject property, this Court does nothing more than place a further cloud on title."); *see also Mahaffey v. Alexander*, 800 So.2d 1284, 1286 (Miss. Ct. App. 2001) (observing that in an action to quiet title, persons holding a legal or equitable interest in the land must be joined to the action, and that if any outstanding title or claim were left undisposed of, which might give rise to future controversy, "there would be accomplished no quieting"); *Greene v. McLeod*, 156 N.H. 724, 942 A.2d 1254, 1256 (N.H. 2008) ("A trial court may not render judgment quieting title to disputed property in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged.") (internal quotation marks omitted).

At best, as a practical matter, the Superior Court's judgment did nothing to quiet title in favor of the defendants. At worst, the judgment clouded the title even more than it was prior to the litigation, to the detriment of both Marsh-Monsanto and the defendants. Therefore, joinder of the unnamed Marsh heirs was compulsory under Rule 19(a)(1)(A).

Even more irrefutable is that the second subsection of Rule 19, subsection (a)(1)(B), also necessitates joinder of the absent Marsh heirs. Unlike subsection (a)(1)(A), subsection (a)(1)(B) requires the court to consider how adjudication and disposition of the case among those parties before it would affect any absent parties. Here, the relevant question is whether the absent Marsh heirs "claim[] an interest relating to the subject of the action" and are "so situated that disposing of the action in the person[s'] absence may" either: (i) impair or impede their ability to protect their interests; or, (ii) subject an existing party "to a substantial risk of incurring double, multiple or otherwise inconsistent obligations" because of the other heirs' interest. FED. R. CIV. P. 19(a)(1)(B).

Undoubtedly, the ten unnamed Marsh heirs fall squarely within the ambit of Rule 19(a)(1)(B). First, they claim an interest relating to the subject of this case, as they are all named as tenants in common in the 1982 partition deed. And while the record does not disclose that all the

other siblings affirmatively claimed their interest in Parcel 6-U, I hardly consider this a prerequisite to the application of this subsection, particularly considering the absolute lack of evidence that any of the siblings disclaimed or in any way terminated or alienated their ownership interests. *See Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 & n.2 (1st Cir. 1998) (holding that an unnamed party who remains "silent" can nonetheless be deemed to claim an interest relating to the subject matter of the action because "claims an interest" in this context means nothing more than the party "appears to have such an interest"); *Prosser*, 2013 U.S. Dist. LEXIS 59373 (recognizing that if the absent party "*could* claim an interest, that is enough to fall within Rule 19(a)(1)(B)"). Moreover, any requirement that the absent party actively claim an interest in the subject property presupposes that the party is aware of the pending action and has an opportunity to join. Surely, Rule 19 could not have intended to impose this burden on interested parties, particularly as in this case, the Marsh siblings have a recorded partition deed for the property subject to the lawsuit.

Second, the unnamed Marsh heirs are situated in a manner such that the disposition of the action in their absence would have certainly impaired or impeded their ability to protect their interests. The trial court's extensive and conclusive rulings on the merits of the case essentially dispossessed them all of their ownership interest in Parcel 6-U. To illustrate, I refer to the following ruling of the trial court:

> [I]t is hereby ordered, adjudged, and decreed that Defendants' motions for summary judgment are granted, and th[is] . . . civil action is dismissed with prejudice; and it is further ordered, adjudged, and decreed that the real property which Plaintiff describes as Remainder of Parcel 6 (composite Parcel 6U) Estate Carolina, St. John, U.S. Virgin Islands is the same real property more properly and legally described as Remainder of Parcel 6-3 Estate Carolina, St. John, U.S. Virgin Islands; and it is further ordered, adjudged, and decreed that Remainder of Parcel 6-3 Estate Carolina is a portion of Parcel 6-3 Estate Carolina, St. John, U.S. Virgin Islands which, via warranty deed dated January 26, 1968, Will Marsh duly conveyed to William Clarenbach and Herbert McConnell in fee simple absolute.

(JA at 8.)

The mandate of Rule 19(a)(2) is undisputed. Since Marsh-Monsanto did not name her siblings as parties, presumably because she believed she was validly representing them, and the defendants did not make them parties of any category, the Superior Court was obligated to join them to the action.

While the majority seems to acknowledge the patent unjustness of the declaratory judgment, it nevertheless affirms the statute-of-limitations ruling against Marsh-Monsanto, on the premise that that ruling was merely procedural, and separate from the merits of the claim. This approach is disquieting because it both induces piecemeal litigation and fails to protect the unnamed siblings' fundamental due process rights, as res judicata may still bar them from relitigating this case in the future.

It is widely recognized that for claim preclusion purposes, an adjudication based upon the expiration of a statute of limitations is a judgment on the merits. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations . . . as a judgment on the merits."); *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) ("A summary judgment on the basis of the defense of the statute of limitations is a judgment on the merits."); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir 1981) ("[A] dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits, unless it is specifically stated to be without prejudice."); *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) ("A dismissal on statute of limitations grounds is a judgment on the merits that operates as res judicata" (internal quotation marks omitted)); *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003) ("[A] dismissal for failing to comply with a statute of limitations is a decision on the merits for claim preclusion purposes."), *abrogated on other grounds by 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009); *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (same); *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128-29 (10th Cir. 1991) (same); *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1046 (5th Cir. 1989) (same).

Under the res judicata doctrine, both Marsh-Monsanto and her privies may be barred from litigating claims that arise out of the same transaction or occurrence as the original lawsuit. *See Smith v. Turnbull*, 54 V.I. 369,

375 (V.I. 2010). A trial court may easily deem the unnamed siblings in privity with Marsh-Monsanto because they are all tenants in common, who received their ownership of Parcel 6-U from their father in the same partition deed, and their titles are all in dispute by virtue of an identical issue. *See Reynolds v. JPMorgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 4503 (M.D. Ga. Jan. 14, 2014) (finding privity between parties where they jointly owned property as tenants in common); *Franco v. District of Columbia*, 3 A.3d 300, 305 (D.C. 2010) ("In property law, a privity relationship 'denotes a mutual or successive relationship to the same rights of property.' " (citation omitted)); *Tahoe-Sierra Pres. Council v. Tahoe Reg. Planning*, 322 F.3d 1064, 1081 (9th Cir. 2003) (privity may exist when there is sufficient commonality of interest between the parties); *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St. 3d 526, 2009 Ohio 1704, 905 N.E.2d 1210, 1217 (2010) (recognizing that privity may be formed where there exists "a mutuality of interest, including an identity of desired result").

Therefore, in my judgment, the Superior Court simply should not proceed on an action to quiet title or otherwise remove a cloud on title when parties having a recorded ownership interest in the property have not been joined. *See O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800, 805 (W. Va. 1997) ("[W]hen a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void."); *Wacker Oil, Inc. v. LoneTree Energy, Inc.*, 459 N.W.2d 381, 383 (N.D. 1990) ("[I]n an action to quiet title all persons appearing of record to have a possible claim or interest in the land involved should be made parties."); *Silvas v. Remington Oil and Gas Corp.*, 109 Fed. Appx. 676, 677-78 (5th Cir. 2004) ("[N]o decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the court.") (quoting *Ward v. Humble Oil & Refining Co.*, 321 F.2d 775, 780 (5th Cir. 1963)).

Due process, fairness and justice mandate that all the Marsh heirs be made parties to this lawsuit and be properly served with legal process, consistent with applicable law, before any adjudication can be made in this case.

## 2. Marsh-Monsanto's *pro se* Representation.

I now turn to the second critical procedural issue this case, the plight of a *pro se* party attempting to litigate a complex and intricate lawsuit. I will also address the steps which Superior Court judges may wish to consider taking in future complex cases involving *pro se* litigants who are not attorneys, who are not members of the Virgin Islands Bar Association, who have never attended law school, and who are not otherwise conversant with the law and court rules and procedures involving litigation.

This case involves innumerable interested parties, multiple deeds for several acres of land, and survey maps by deceased surveyors, spanning decades. It is flabbergasting that with so much at stake, a *pro se* litigant with no rudimentary knowledge of the rules of evidence, the rules of court procedure, the trial court rules, and the statutory and substantive law applicable to the case would endeavor to litigate this case *pro se*. Even a cursory review of the record reveals that, opposed by at least three veteran and experienced attorneys, Marsh-Monsanto's representation was ineffective, confounding and disastrous.

From the inception of the proceedings, Marsh-Monsanto proved to insufficiently understand litigation procedure. Many defendants were not properly served with legal process. In fact, the court was even compelled to explain to Marsh-Monsanto that defendants must be served with both a summons and a complaint, and many defendants were dismissed simply because of her failure to properly serve them. Crucially, Marsh-Monsanto's third and fourth amended complaints were grossly deficient in meeting the prerequisites for a properly pled complaint under court rules and United States Supreme Court precedent. Next, when the hearing on summary judgment was underway, it became evident that Marsh-Monsanto did not understand what statements constituted cognizable evidentiary material for consideration, as compared to counsel's opinions or her personal opinion on the circumstances or facts of the case. On various occasions, she made testimonial statements from counsel's table which had to be discounted by the trial court because she had not been sworn and had not taken the witness stand to testify. Because of Marsh-Monsanto's insistence in making these improper testimonial statements, the trial court eventually had her sworn during her direct examination of her expert witness. However, immediately after being sworn, she relaunched her direct examination of her witness.

392

In apparent desperation, Marsh-Monsanto resorted to seeking the trial court's assistance with the presentation of her case. Of course, as the decision maker, the trial court was obligated to remain impartial and could not offer Marsh-Monsanto the assistance she requested. For instance, the following dialogue ensued between Marsh-Monsanto and the trial court after her obvious confusion about whether she wished to admit a specific exhibit into evidence:

> MARSH-MONSANTO: Maybe you can help me make the right decision, Your Honor —
> THE COURT: I cannot help you.
> MARSH-MONSANTO: — because you can clearly see somebody took 6-4[,] put a line through it and put 6-3.
> THE COURT: Miss Monsanto, I cannot give you any advice.

(JA at 558.)

On a separate occasion, Marsh-Monsanto solicited the court's advice regarding which questions she was allowed to pose to her own witness. Additionally, despite the lengthy pendency of this case, Marsh-Monsanto never conducted any discovery, such as interrogatories, depositions, requests for admissions, and requests for production of documents.

Perhaps even more stupefying and flabbergasting is the untold prejudice to the absent Marsh siblings caused by Marsh-Monsanto's *pro se* representation. Marsh-Monsanto could not and did not effectively safeguard the interests of her siblings. Importantly, Marsh-Monsanto is not licensed to practice law in the Virgin Islands and she is not a member of the Virgin Islands Bar Association. Being charitable, Marsh-Monsanto was in no position to adequately represent and would not have represented her siblings. Any futile and misguided belief that she represented her siblings would undeniably constitute the "unauthorized practice of law" under 4 V.I.C. § 443(a).[1]

---

[1] 4 V.I.C. § 443(a) provides as follows:

Except as otherwise provided by law or rule of court, and excepting court personnel acting in the performance of their court duties, the unauthorized practice of law shall be deemed to mean the doing of any act by a person who is not a member in good standing of the Virgin Islands Bar Association for another person usually done by attorneys-at-law in the course of their profession, and shall include but not be limited to:

393

While Marsh-Monsanto has legal counsel on appeal, an attorney was most needed in the trial court, especially considering the dire implications of trial missteps on appeal. Generally, issues not raised in the trial court cannot be raised for the first time on appeal and are deemed waived. V.I.S.Ct.R. 4(h), 22(m).

As a layperson, Marsh-Monsanto is not trained to explore multiple theories of a case, further making her representation outrageously deficient. For instance, a licensed attorney, in conducting diligent discovery, may have discovered that the Marsh siblings had a plausible claim for adverse possession under 28 V.I.C. § 11. Under this section of the Virgin Islands Code, the period for adverse possession is 15 years. Depending on the yields of proper discovery, the heirs may have been found to possess the property for 15 years in the manner prescribed by statute, following the alleged conveyance of Parcel 6-U to Clarenbach and McConnell in 1965. And while the trial court noted that Marsh-Monsanto had never contended to being in physical possession of the property, this Court has previously explained at length that adverse possession is not synonymous with occupancy and that the acts required to accomplish adverse possession vary depending upon the nature of the property. *Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 606-08 (V.I. 2012). But again, with limited exceptions such as "plain error," the issues not raised in the trial court are not addressed on appeal.

In my view, when a *pro se* litigant appears in a complex case, the trial judge should hold a hearing and explain to the *pro se* litigant the dire need to retain legal counsel, or at the very least, have a consultation session or several sessions with a licensed Virgin Islands attorney regarding the case. Then, an order should be entered allowing the litigant a minimum of 120 days to obtain counsel. A second hearing should be held for the court to ascertain, with the *pro se* litigant being sworn, if counsel has been retained, and if necessary, the reasons for failure to retain counsel. If the *pro se* litigant decides to proceed without counsel, the court should once again explain to the *pro se* litigant the urgent and compelling need for legal counsel in order to properly present and prove the *pro se* litigant's

---

the appearance, acting as the attorney-at-law, or representative of another person, firm or corporation, before any court . . . or the preparation and/or filing of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the same.

claims or defenses, as well as to present the case consistent with the court's rules of procedure, the rules of evidence, and the rules of the substantive law applicable to the case. Moreover, *pro se* litigants in complex cases must be informed that all rules and laws will be binding on them, with no exceptions to be made by the trial court. Further, the trial court should unequivocally inform the *pro se* litigant that no legal advice or other assistance would be rendered to the *pro se* litigant or offered from the court or be forthcoming from the court to assist the *pro se* litigant in the presentation of the case. These procedures, at a minimum, should be considered by trial judges.[2]

### 3. The Superior Court erred in Granting Summary Judgment.

While I certainly agree with the majority that the Superior Court erred in even arriving at the underlying merits of Marsh-Monsanto's claim, I must further emphasize that the Superior Court's ruling, in itself, was also error. First, trial courts should act with caution in granting summary judgment. *Sealey-Christian v. Sunny Isle Shopping Center, Inc.*, 52 V.I. 410, 419 (V.I. 2009). The court is obligated to "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Id.* Summary judgment should only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Marsh-Monsanto's evidence must have amounted to more than a scintilla, but may have amounted to less than a preponderance. *Williams v. United Corp.*, 50 V.I. 191, 195 (V.I. 2008).

To begin, I totally disagree that the trial court should have utilized the drastic remedy of summary judgment in a case such as this, where there is "significant probative evidence" supporting the Marsh family's owner-ship of Parcel 6-U, which is sufficient to defeat summary judgment. *See Sealey-Christian*, 52 V.I. at 421. Certainly, given the recorded partition deed, the map of Rudolph B. Galiber depicting Parcel 6-U as separate from Parcel 6-3, the tax bills for Parcel 6-U issued to the Marsh family and payments on such bills, and the 2003 Title & Encumbrance Statement

---

[2] Marsh-Monsanto filed her complaint in the Superior Court in 2004. Because this Court does not have before it a full record, dating back to the commencement of the case, there is no indication of whether the court addressed with Marsh-Monsanto the importance of retaining counsel.

evidencing the siblings' ownership of Parcel 6-U, it is reasonable to conclude that Marsh-Monsanto presented more than a scintilla of evidence supporting her complaint. Marsh-Monsanto's testimony, as well as that of one of her sisters, Genevieve Marsh, also supported Marsh-Monsanto's position that the subject property belongs to the Marsh siblings. In compliance with the directive of the Supreme Court of the United States, Marsh-Monsanto's evidence *must* be believed at the summary judgment stage. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863, 1866, 188 L. Ed. 2d 895 (2014) (explaining that in ruling on a motion for summary judgment, the nonmovant's evidence will be believed, all disputed issues will be resolved against the moving party, all facts will be construed in a light most favorable to the nonmovant, and all reasonable inferences will be drawn in the nonmovant's favor). Here, Marsh-Monsanto is the nonmovant or non-moving party. Had the court properly drawn all reasonable inferences in Marsh-Monsanto's favor to the extent supported by the record, it would have determined that the conflicts between Marsh-Monsanto's evidence and that of the defendants presented a genuine issue of material fact as to whether the siblings held valid title to the subject property.

Even more evident is that the trial court not only failed to view facts and draw inferences in the light most favorable to Marsh-Monsanto, but also inappropriately assumed the role of factfinder, rather than entrusting that responsibility to a jury. A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Tolan*, 134 S. Ct. at 1866. Accordingly, "[o]n summary judgment, a court is concerned with the *sufficiency* and not the weight of the evidence." *Sealey-Christian*, 52 V.I. at 422 (emphasis added).

The monumental clash in this case is between two maps. The first map was prepared by the late Rudolph B. Galiber in 1981, and bears the map number P.W.D. No. C9-262-T81 (the "Galiber map"). The second map (which is, in effect, a drawing) was prepared in 2014 by Brian Mosely & Associates, Inc., through its employee, Ryan C. Wisehart. This map is dated June 3, 2014 and is numbered D.W.G. No. C3D-1675-3C (the "Wisehart map").

Unfortunately, Galiber is deceased and cannot testify regarding his map or otherwise defend it. Nonetheless, under Federal Rule of Evidence 201, I will examine his work by taking judicial notice of his survey map relevant to Parcel 6-U, as it is a public record filed in the Office of the

Lieutenant Governor.[3] The Galiber map depicts Parcel 6-3 and its subdivisions as *separate and apart* from the property which he designates as Parcel 6-U. Also, as indicated on the map itself, Galiber references a 1959 survey which was done by a licensed surveyor, W.B. Bachman, to support his map.

Wisehart's map also partially relies on the 1959 survey done by Bachman, as well as various surveys, maps and adjudications pertinent to the case. Wisehart's map, however, conflicts with the Galiber map, and places Parcel 6-U Estate Carolina squarely *within* Parcel 6-3, which William Marsh sold to Clarenbach and McConnell. Wisehart neither conducted a field survey of the subject property, nor deemed one necessary. In addition to relying on the Wisehart map, the court also considered the testimony of Wayne D. Callwood, Public Surveyor and Chief of the Cadastral Section. Callwood testified that "6-U came out of the unsurveyed remainder of Parcel 6-3 Estate Carolina," and cited a failure of the "checks and balances" at the Office of the Cadastral Section for the absence of a corresponding notation.

I have combed through the court's findings announced from the bench, as presented in the record. The Superior Court primarily weighed the Galiber map, the partition deed and the testimony of Genevieve Marsh, against the Petition for Administration in the late William Marsh's probate matter, Wisehart's map and affidavits, and the testimony of Wayne D. Callwood. After weighing the evidence, the court determined that the defendants, and not the Marsh family, own the subject property. However, the evidentiary inconsistencies and disputed facts mentioned above go to the very crux and essence of why this case should have proceeded before a trier of fact, and unequivocally and irrefutably demonstrate why I find the court's granting of summary judgment unsettling. Perhaps, after a trial, a jury would have arrived at the same end result as the court did. But it is immaterial for summary judgment purposes whether Marsh-Monsanto would have prevailed at a jury trial,

---

[3] Under Rule 201(b) of the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A copy of the Galiber map was received in the Superior Court proceedings, and is part of the record of this case on appeal. A more legible version of this same instrument is on file as an original document in the Office of the Lieutenant Governor, and I take judicial notice of that filed document in verifying its contents.

and I take no position in this regard. When confronted with a summary judgment motion, the court is simply not at liberty to commandeer the factfinding function of the jury, as its only concern is the sufficiency of the nonmovant's evidence. As the Supreme Court of the United States has repeatedly held in the context of summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Although Marsh-Monsanto presented sufficient evidence that there was a genuine issue to be tried, the Superior Court impermissibly weighed the evidence and determined the truth of the matter, instead of scheduling the case for a full trial on the merits.

Lastly, I take this occasion to address a comment made by Wisehart in his January 14, 2014 survey report, as it is part of the record before this Court and may implicate land surveying in the Virgin Islands. Wisehart states, "[i]t is worth noting that, in my experience as a professional land surveyor licensed in the Virgin Islands since 2002[,] when a map is registered of a property for which a prior survey exists[,] the prior map is superseded by the newer, superior map."[4] Is Wisehart's report saying that a survey done in 2018, 2020 or 2024 automatically supersedes the earlier maps prepared by licensed surveyors and duly registered in the Cadastral Section of the Department of Public Works in the 1950's, 1960's, 1970's, 1980's, 1990's, 2000's, and 2010 and beyond, purely by virtue of being created later in time? This principle, if adopted or adhered to, would allow current surveyors to nullify any map drawn and registered over decades when the original surveyors are deceased, as in this case, without any consideration of the accuracy of the past surveys. In short, this standard is ludicrous, preposterous, and an outlandish invitation for mischief which would wreak untold havoc on property ownership in the Virgin Islands.

For the reasons elucidated above, I respectfully dissent from the majority's decision to affirm the dismissal of Marsh-Monsanto's claims on statute-of-limitations grounds. Fairness to the unnamed Marsh siblings dictates their joinder before the case proceeds. Therefore, I would remand this case to the Superior Court with instructions to the court to order that they be made parties to this action.

---

[4] Wisehart's statement is referencing a map which he believes would be more authoritative than the Galiber map, because it was created three years after Galiber's.