IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
December 06, 2022 02:50 PM
SX-2021-CV-00548
TAMARA CHARLES
CLERK OF THE COURT



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

MILTON BURT,

               Plaintiff,

               v.

LOCKHEED MARTIN CORP.
and GLENCORE LTD.,

               Defendants.

SX-2021-CV-548

**Cite as: 2022 VI Super 97P**

**Appearances:**
**Korey A. Nelson, Esq.**
Burns Charest LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
*For Plaintiffs*

**J. Russell Pate, Esq.**
The Pate Law Firm
PO Box 890
St. Thomas, VI 00804
*For Plaintiffs*

**Warren T. Burns, Esq. and Daniel T. Charest, Esq.**
Burns Charest, LLP
900 Jackson Street, Ste. 500
Dallas, TX 75202
*For Plaintiffs*

**Kevin A. Rames, Esq., and Semaj Johnson, Esq.**
K.A. Rames, P.C.
211 Company Street, Ste. 3 Christiansted,
St. Croix VI 00820
*For Defendants Lockheed Martin Corporation*

**Gregory K. Wu, Esq., KaSandra N. Rogiers, Esq., and Sangeeta Shastry, Esq.**
Shook, Hardy, & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
*For Defendants Lockheed Martin Corporation*

**Jacques Semmelman, Esq., and Eliot Lauer, Esq.**
Katten, Muchin, Rosenman LLP
50 Rockefeller Plaza
New York, NY 10020
*For Glencore Ltd.*

**Douglas Capdeville, Esq.**
Capdeville Law
2107 Company St.
St. Croix, V.I. 00822
*For Glencore Ltd.*

**MEMORANDUM OPINION**
**(Filed December 6, 2022)**

**Andrews, Jr.,** *Judge*

## INTRODUCTION

¶1    Milton Burt, a 76-year-old former maintenance worker at the Alumina Refinery in St. Croix, brings this action for damages against the successor owner of the refinery and the company that supplied bauxite to the refinery.   He alleges, during his employment, Defendants negligently exposed him to toxic substances which caused him to suffer from lung disease.   Defendants move this Court to grant them a summary judgment because Burt filed his complaint after the expiration of the applicable two-year statute of limitations. Burt responds the statute of limitations was tolled until at least July 21, 2019, when he discovered the

cause of his disease and therefore his complaint was timely filed on July 15, 2021.

For the reasons mentioned below, this Court concludes the statutory period for

Burt to file his complaint expired on March 18, 2021. His complaint is therefore

time barred. Accordingly, the Court will grant Defendants' Motion for Summary

Judgment Based on the Statute of Limitations.

## FACTUAL BACKGROUND

¶2 From 1972 to 1985, predecessors of defendant Lockheed Martin Corp.

(LMC) owned and/or operated an Alumina Refinery located on the south shore of

St. Croix.[1] SUF ¶¶ 1-2. In 1989, VIALCO, a different predecessor of LMC,

purchased the refinery and operated it from 1990 to 1995. SUF ¶¶ 4, 5, 7.

Defendant Glencore, Ltd. (GL) supplied bauxite to VIALCO. SUF ¶ 6. Plaintiff

worked at the refinery from 1967 to 1985 and 1988 to 1995 as a maintenance

worker. Complaint, ¶¶ 7- 8.

¶3 Based upon Defendants' submitted Statement of Undisputed Facts and

attached exhibits, Plaintiff's Response, and Defendants' Reply, the Court finds the

following facts to be undisputed:

   a. By letter dated February 7, 2019, Plaintiff's counsel told Plaintiff that
      Plaintiff had "answered questions about his work history," was
      selected for an x-ray screening to look for possible lung damage, and

---

[1] Plaintiff disputes this fact and asserts that each of LMC's predecessors had a different role within the refinery. SUF ¶ 2, Pl's. Response. However, he submitted no document in support of his bare denial and does not specifically dispute Defendants' assertion. Thus, the Court treats the asserted fact as undisputed. V.I.R. Civ. P. 56(e)(2).

      instructed him to appear at the imaging center for a chest x-ray.[2] (SUF ¶¶ 35-36);

b. Counsel, by the February 7, 2019 Letter, told Plaintiff he would schedule a breathing test if lung damage was found to know if Plaintiff qualified for a lawsuit against HESS/HOVIC for lung damage due to exposure to asbestos. (Ex. 19, SUF Pate Letter);

c. Counsel further instructed Plaintiff that if he did not work at the HESS/HOVIC refinery he should call the office so they could make sure that Plaintiff is in the Alumina Plant Group. (Id.);

d. On or about February 28, 2019, Plaintiff received a diagnosis of asbestosis and pneumonoconiosis.[3] (SUF ¶¶ 32, 40);

e. The term "pneumonoconiosis" describes a group of interstitial lung diseases, including asbestosis and mixed dust pneumoconiosis. (SUF ¶ 25);

f. In his February 28, 2019 Report, Dr. Christopher John stated that he "believed beyond a reasonable degree of medical certainty that Plaintiff has evidence of underlying lung disease in the form of

---

[2] Plaintiff does not dispute this assertion of fact but claims that the letter is subject to the attorney-client privilege. This Court finds that the letter is not privileged for the reasons cited in Defendant's Reply, i.e. that Plaintiff has since disclosed the letter to third parties.

[3] Plaintiff claims that this fact is disputed since, "Dr. John stated in his deposition that he needs to know work history to be able to make a diagnosis." Pl's. Opp. to Statement of Undisputed Facts, ¶ 32. The assertion that knowledge of work history is a prerequisite to making a diagnosis is unresponsive to Defendants' specific claim that Plaintiff received the stated diagnosis on February 28, 2019, or immediately thereafter. For this reason, the Court considers the asserted fact as undisputed. V.I.R. Civ. P. 56(e)(2). Further, Dr. John's February 28, 2019 Report clearly states that: a) he read Plaintiff's February 28, 2019 x-ray report; b) he noted parenchymal changes diagnostic of pneumoconiosis; and c) he believed with a certain degree of medical certainty that Plaintiff has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure. Ex. 17, Aff. of Kevin Rames 10/28/22 (BURT 548-003). Plaintiff has thus not presented any contrary information that creates a genuine issue of material fact as to Defendants' asserted statement of undisputed fact in item (a) above.

> bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure." (SUF ¶ 41);

g. Counsel for Plaintiff received a copy of Dr. John's February 28, 2019 Report no later than March 18, 2019. (SUF ¶ 43);

h. On July 21, 2019, Dr. Michael Chesnutt performed a pulmonary function test on Plaintiff and issued a report that did not express an opinion regarding Plaintiff's diagnosis. (SUF ¶¶ 48, 49);

i. A pulmonary function test evidences lung function, but not the diagnosis or the cause of any disease. (SUF ¶ 45); and

j. On one occasion, i.e., July 6, 2022, Dr. Christopher John interviewed and physically examined Plaintiff, and obtained information from Plaintiff himself. (SUF ¶¶ 46-47).

¶4 On July 15, 2021, Milton Burt commenced the above-captioned civil action for negligence and strict liability against LMC, GL, and Cosmogony II, Inc.[4] He claims he now suffers from pneumonoconiosis as a direct result of his repeated exposure to the toxic substances during his employment at the refinery. Id. ¶¶ 9,14.

¶5 On October 18, 2022, defendants LMC and GL filed the instant Motion for Summary Judgment Based on the Statute of Limitations. Plaintiff opposed the motion on November 1, 2022 and Defendants filed their reply on November 8, 2022. On November 23, 2022, this Court held a hearing on Defendants' motion and took the matter under advisement.

---

[4] This Court stayed further proceedings against defendant Cosmogony II, Inc. after receiving notice of its involuntary bankruptcy filing. Order Staying Proceedings, SX-2022-MC-027, June 16, 2022. Cosmogony is thus not part of the instant motion for summary judgment.

## APPLICABLE LAW

¶6     Under Virgin Islands law, summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." V.I.R. Civ. P. 56(a); Machado v. Yacht

Haven U.S.V.I., LLC, 61 V.I. 373, 380 (V.I. 2014) (stating summary judgment is not

to be granted unless "the pleadings, discovery, and disclosures of materials on file,

and any affidavits show that there is no genuine issue of material fact.). The

movant bears the burden of demonstrating the absence of any genuine issue of

material fact based upon the record. Aubain v. Kazi Foods of V.I., LLC, 70 V.I. 943,

948 (V.I. 2019) (quoting Brodhurst v. Frazier, 57 V.I. 365, 373-74 (V.I. 2012)). The

moving party may meet his burden by "pointing out that there is an absence of

evidence to support the nonmoving party's case." Id.   If this is done, the burden

shifts to the non-moving party to demonstrate with affirmative evidence from which

a jury might reasonably rule in his favor. Id.   Pursuant to the Virgin Islands

Supreme Court, "'affirmative evidence' means 'actual evidence' and 'not mere

allegations'." Basic Servs. v. Govt. of the V.I., 71 V.I. 652, 659 (V.I. 2019).   In

considering a summary judgment motion, "this Court must view all evidence in the

light most favorable to the non-moving party." Id.   Here, that party is the Plaintiff.

## LEGAL ANALYSIS

¶7     Defendants seek dismissal of Plaintiff's complaint on grounds that it was

filed outside the applicable two-year statute of limitations. They argue that any tolling under the discovery rule ended no later than March 18, 2019 when Plaintiff's counsel received a medical report indicating evidence of asbestosis and pneumonoconiosis along with a history of exposure to asbestos. Defs.' Mot. for Summ. J., p 8; Defs.' Reply, p 3. Plaintiff responds that tolling of the limitations statute continued until, at least July 21, 2019, the date Plaintiff could have learned of the cause of his injury and the potential responsible parties. Pl's. Opp. p 14. Hence, Plaintiff continues, he timely filed his complaint on July 15, 2021. For the reasons that follow, this Court concludes that tolling of the applicable statute of limitations pursuant to the discovery rule ceased, at the latest, on March 18, 2019. As such, Plaintiff's complaint was untimely.

### 1) The Discovery Rule Applies to Toll the Applicable Statute of Limitations on Plaintiff's Claims.

¶8    In his complaint, Plaintiff asserts strict liability, negligence, and other personal injury claims not arising on contract. Complaint, pp 5 – 28. Pursuant to Virgin Islands law, the time period within which to commence an action for non-contractual injury to person is two years after the cause of action has accrued. 5 V.I.C. § 31(5)(A). Generally, a cause of action accrues upon occurrence of the essential facts that give rise to that cause of action. In re Tutu Wells, 846 F. Supp. 1243, 1255, 29 V.I. 41, 57 (D.V.I. 1993). Here, Plaintiff's cause of action would have accrued no later than 1995 when he terminated his employment at the

refinery. However, where, as here, the injury or its cause is not immediately known despite the exercise of due diligence, the discovery rule applies to toll the applicable statute of limitations. Santiago v. V.I. Housing Auth., 57 V.I. 256, 273 (V.I. 2012) (citing Joseph v. Hess Oil, 867 F.2d 179, 182 (3d Cir. 1989)) (stating, in an asbestos case, "the discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim."). Tolling continues until "the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct." Joseph, 867 F.2d at 182 n. 8. The focus under the discovery rule is not on the plaintiff's actual knowledge but on "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." Santiago, 57 V.I. at 273 (quoting Bohus v. Belof, 950 F.2d 919, 925 (3d Cir. 1991)). Precision and certainty of the injury and cause is not required. Instead, "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need investigate to determine whether [she] is entitled to redress." Marsh-Monsanto v. Clarenbach, 66 V.I. 366, 375 (V.I. 2017) (quoting Santiago v. V.I. Hous. Auth., 57 V.I. 256, 274 (V.I. 2012)).

¶9     Under the circumstances here, this Court concludes that the discovery rule is applicable to the two-year statute of limitations on Plaintiff's claims. The parties do not dispute this conclusion. What they dispute is the date on which tolling

under the rule terminated.   Hence, the narrow issue is whether there is a genuine issue of material fact as to the date Plaintiff knew or should have known that he had an asbestos-related injury and the cause thereof.   If such a material factual issue exists, the Motion for Summary Judgment must be denied and the jury will determine the factual issue.   Plaintiff argues that the application of the discovery dule is typically a question of fact for the jury to decide. Pl's. Opp., p 2.   This may be so, however, where there is no genuine issue of material fact, this Court may proceed to determine whether Plaintiff's action is time barred as a matter of law. See Marsh-Monsanto, 66 V.I. at 375 (stating "when the underlying facts are undisputed, application of the statute of limitations presents a question of law that may be resolved by summary judgment.").

### 2) The Discovery Rule Tolled the Two-Year Statute of Limitations on Plaintiff's Claims Until March 18, 2019, as a Matter of Law.

¶10    Plaintiff concedes Dr. John's February 28, 2019 Report alerted him to the fact of his injury.[5]   He correctly notes that Dr. John's "2019 Impression did not identify Mr. Burt's particular exposures as potential causes of Mr. Burt's lung disease." Pl's. Opp., p 3.   He argues that "while Dr. John's [February 28, 2019] x-ray reading may have alerted Mr. Burt to the existence of an injury, it did not identify

---

[5] Prior to commencement of argument at the November 23, 2022 hearing, Plaintiff conceded that, by March 18, 2019, he knew that he had suffered an injury, i.e., asbestosis, and agreed that the sole issue posed by Defendants' motion is when Plaintiff became aware of the cause of his injury.

the cause of that injury," hence, the limitations statute remained tolled while Plaintiff undertook an investigation into the cause of his injury. Pl's. Opp. p 2. Defendants counter that Dr. John's letter sufficed to put Plaintiff on notice that he had an injury and that it was caused by exposure to asbestos. Defs.' Mot. for Summ. J., p 3. This Court agrees.

> After reading Plaintiff's x-ray report, Dr. John reported in part, as follows:
>
> CHEST X-RAY: Parenchymal changes diagnostic of pneumonoconiosis are noted . . .
>
> IMPRESSION: Given the patient's [Plaintiff's] abnormal chest x-ray and appropriate latency period, I believe beyond a reasonable degree of medical certainty that he [Plaintiff] has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure . . .

SUF ¶¶ 40, 41; Ex. 17 (Dr. Christopher John's February 28, 2019 Report). Plaintiff's counsel received Dr. John's letter no later than March 18, 2019. SUF ¶ 43. The letter constitutes but one source of Plaintiff's knowledge regarding the cause of his injury. The Court, however, must consider all facts and circumstances bearing on Plaintiff's knowledge. The following undisputed circumstances reveal additional information known to Plaintiff before February 28, 2019:

> a. Plaintiff worked at the Alumina Refinery for twenty-five (25) years between 1967 and 1995. (Complaint ¶ 7);
>
> b. Plaintiff reached out to his current lawyer, prior to February 7, 2019, because his health was beginning to deteriorate, and discussed his work history. (Ex. 123 (Burt Dep. at 78: 8-13), SUF

Pl's. Response);

c. By letter dated February 7, 2019, Plaintiff's current lawyer advised him that he was selected for an x-ray screening and to report for one as soon as possible. (Ex. 19, SUF (February 7, 2019 Pate Letter));

d. Counsel further advised that if lung damage was found, he would contact Plaintiff to schedule a breathing test and collect his social security records. (Id.);

e. Counsel also advised that he would know, after the breathing test, whether Plaintiff qualified for a lawsuit against HESS/HOVIC for lung damage and shortness of breath due to exposure to asbestos. (Supp SUF ¶ 5); and

f. Counsel instructed Plaintiff that if he did not work at the HESS/HOVIC refinery he should call the office so they could make sure that Plaintiff is in the Alumina Plant Group. (Supp SUF ¶ 6).

Based on the above undisputed facts, it is clear that prior to the issuance of Dr. John' February 28, 2019 letter, Plaintiff knew that: 1) he worked at the Alumina Refinery for twenty-five (25) years; 2) he sought legal (not medical) representation due to his declining health; 3) he discussed his work history with counsel; 4) he was advised to report for an x-ray screening to determine whether he had lung damage; and 5) he knew he was embarking on a procedure to determine whether he qualified for a lawsuit against HESS/HOVIC or his former employers at the Alumina Plant, i.e. Martin Marietta and VIALCO (Defendants' predecessors), because of lung damage due to exposure to asbestos.   It is thus evident that even before the February 28, 2019 confirmation of Plaintiff's injury, his current counsel believed, and so advised Plaintiff, that if lung damage was found it would be as a

result of exposure to asbestos. Plaintiff and current counsel discussed the cause (i.e. asbestos exposure) even before confirmation of the injury. This information, coupled with the information provided by Dr. John's report, was more than sufficient to put a reasonable person on notice that he suffered an injury (i.e. lung damage diagnostic of asbestosis) and that it was caused by a history of exposure to asbestos. Further, a reasonable person who worked at the alumina refinery for 25 years would know that his employment there was the source of such exposure. Therefore, by March 18, 2019, Plaintiff knew (or should have known) he had an injury – asbestosis – and that it was caused by his exposure to asbestos while employed at the Alumina Refinery owned by Defendants' predecessors.[6] Nothing presented by Plaintiff lends itself to a reasonably contrary conclusion. In light of these undisputed facts, the discovery rule's equitable tolling stopped, the two-year statute of limitations was triggered, and Plaintiff's cause of action accrued, on March 18, 2019. See Dabaldo v. URS Energy & Constr., 85 A.3d 73, 79 (Del. 2014)) (citing In re Asbestos Litigation, 673 A.2d 159, 162 (Del. 1996) (holding, "[T]he two-year statute of limitations on asbestos-related personal injury claims

---

[6] Plaintiff is deemed to have knowledge of Dr. John's report as of March 18, 2019 since Plaintiff's agent received the report on that date. Certainly, Dr. John considered Attorney Pate to be Plaintiff's agent as he forwarded the report, containing confidential medical information, to him.

'begins to run when the plaintiff is chargeable with knowledge that his condition is attributable to asbestos exposure.'").

¶11    Plaintiff's assertion that application of the discovery rule simply turns on "whether the plaintiff acted with reasonable diligence while investigating the cause of his injury," is incorrect. Pl's. Opp, p 9.   If that was the standard, a Plaintiff could prolong tolling at will by simply continuing to exercise due diligence.   Such diligence must be assessed in conjunction with the timing of acquisition of the requisite knowledge.   Once the requisite knowledge is acquired (i.e. the existence and cause of the injury), further due diligence is irrelevant to the analysis.   Thus, the relevant issue is:   when did Plaintiff know, or should have known considering the exercise of due diligence, that he suffered an injury and the cause thereof. Based upon the undisputed facts, Defendants have established the date of such knowledge as March 18, 2019.

### 3) Plaintiff has Failed to Present Affirmative Evidence from Which a Jury Might Find That He Did Not Know the Cause of His Injury Until After March 18, 2019.

¶12    In light of Defendant's showing, Plaintiff now bears the burden to present affirmative evidence that a genuine issue of material fact exists regarding when he became aware of the cause of his injuryt. Aubain, 70 V.I. at 943.   To meet this burden,, Plaintiff argues several factors point to July 19, 2019, rather than March 18, 2019, as the earliest end date for tolling under the discovery rule.

¶13    Plaintiff claims that "the 2019 Impression [Dr. John's February 28, 2019

Report] only addresses Mr. Burt's injury – not its cause." Pl's. Opp., p 10.   This is not true.   Dr. John reported that he believed "beyond a reasonable degree of medical certainty that he [Plaintiff] has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure." SUF ¶¶ 40, 41; Ex. 17.   The plain reading of Dr. John's report is that he found, beyond a reasonable degree of medical certainty, Plaintiff had asbestosis, diagnostic of (i.e., caused by) a history of exposure to asbestos.   Further, the very name of the disease, asbestosis, signals the cause. The commonly understood meaning of asbestosis is a disease caused by breathing in asbestos dust.   See   www.oxfordlearnersdictionries.com; www.dictionary.com; https://dictionary.cambridge.org; www.collinsdictionary.com. At the November 23, 2022 hearing, Plaintiff argued that Dr. John's February 28, 2019 Report did not include a diagnosis and that "diagnostic of" simply means "characteristic of."   This Court is not swayed by Plaintiff's semantics dance. Substituting "characteristic of a history of asbestos exposure" for "diagnostic of a history of asbestos exposure" has little if any impact on Dr. John's medical finding. Further, a cause diagnosis is not required to trigger the statute of limitations. See Lapka v. Porter Hayden Co., 162 N.J. 545, 555-56 (N.J. 2000) (stating "plaintiffs suggest that the discovery rule delays accrual of an action until a claimant acquires an exact medical diagnosis of an asserted condition. We disagree.  We impute discovery if the plaintiff is aware of facts that would alert a reasonable person to

the possibility of an actionable claim; medical or legal certainty is not required.");

Judayt v. Merk & Co., 730 Fed. Appx. 10, 110 (3d Cir. 2018) (stating "a definitive diagnosis is not required to trigger the running of the statute of limitations."); Souders v. Atlantic Richfield Co., 746 F. Supp. 570, 575 (E.D. Penn. 1990) (rejecting plaintiff's argument that only a final and definitive diagnosis of asbestos will start the running of the limitations statute and stating, "an asbestosis diagnosis, tentative or final, is not necessary to begin the running of the limitations period.   A finding that Souders' illness, whatever its medical definition, is asbestos-related is sufficient.").   Pursuant to Virgin Islands law, all that is necessary is that the plaintiff "possesses sufficient critical facts to put [her] on notice that a wrong has been committed and that [she] need investigate to determine whether [she] is entitled to redress." Marsh-Monsanto v. Clarenbach, 66 V.I. 366, 375 (V.I. 2014) (citing Santiago v. V.I. Hous. Auth., 57 V.I. 256, 274 (V.I. 2012)).   The facts mentioned above were more than sufficient to provide Plaintiff with the requisite notice.   In short, on March 18, 2019, the cause of Plaintiff's injury was known, or through the exercise of diligence, knowable to him.

¶14   Plaintiff also argues since the February 2019 Report was only based on reading Plaintiff's x-ray results, "it does not connect Mr. Burt's lung disease to any specific exposures and certainly does not connect Mr. Burt's lung disease to his employment at the Alumina Refinery." Pl's. Opp., p 10.   It is true that Dr. John did not indicate the source of Plaintiff's exposure.   However, Plaintiff was well aware

that the main source of any asbestos exposure must have been his twenty-five (25) year employment with Defendant's predecessors at the Alumina Plant. This is evident from his deposition testimony which states as follows:

Q. So, in your interrogatory responses, you said when you were – when you referred to clearing pipes as part of your maintenance work, you said that once the pipe was cleared, it was re-installed in the pipe rack and wrapped with asbestos insulation. Do you remember that?
A. Yeah.
Q. And who was your employer during the time period when you'd re-wrap pipes with asbestos insulation at the plant?
A. Martin Marietta. Burt Deposition, p 53: 3-13

A. Well, we were exposed to red dust, especially, if that is what you are referring to. And we are exposed to a lot of installation. I can't call it asbestos, because at the time, we didn't know anything about asbestos. So I – we were exposed to a lot of installation over the white side, especially Unit 9, where you have a lot of heat, and it need to be insulated to keep in the heat. Burt Deposition, p 62: 10-17.

Q. And when was the next time you spoke to an attorney about this?
A. Since my – since my – my health start to deteriorate, I – I happen To get hold of my present attorney, and he visited me, and we spoke. And he told me what happen to my health. Burt Deposition, p 78: 8-18.

Q. Were you exposed to any dust when you were working as a maintenance man in Area 2?
A. Plenty of it.
Q. Which dust?
A. Bauxite, lime, flour, alumina. Burt Deposition p 147: 17-21

¶15   Ex. 123, Burt Deposition, 08/31/22 (Burns Affidavit Authenticating Exhibits,11-02-22). Finally, the February 7, 2019 Letter to Plaintiff by Attorney Pate evidences Plaintiff's and his counsel's knowledge that: 1) Plaintiff was

exposed to asbestos either at the Hess Oil Refinery or at the Alumina Refinery; and 2) counsel was relying on Plaintiff's knowledge to verify whether he should be in the "Alumina Plant Group."   This information was enough to link his injury to his asbestos exposure at the Alumina Refinery.   Clearly, the purpose of the Chest X-ray was to determine whether Plaintiff's asbestos exposure was linked to an injury. Dr. John confirmed the link on February 28, 2019.

¶16    Plaintiff suggests that tolling continued through at least July 21, 2019, when he underwent a pulmonary function test, answered work history questions, signed an earnings statement request form, and signed a retainer agreement with counsel. Pl's. Opp, p 12.   These steps, Plaintiff argues, were necessary to understand the cause of his injury. Id.   Thus, Plaintiff concludes, July 21, 2019, was "the earliest date on which Mr. Burt could have learned of the cause of that injury and the potential parties responsible for it." Id. at 13 (emphasis supplied). At the November 23, 2022 hearing, Plaintiff further argued that it was not until he had discussions with counsel on July 21, 2019, that he became aware of the cause of his injury.   The court finds no merit to these arguments

¶17    The July 21, 2019 Pulmonary Function Test Report did not express an opinion regarding Plaintiff's diagnosis. SUF ¶¶48, 49.   Such tests do not diagnose the cause of diseases. SUF 45; Ex. 13 at 12:6-19 (Sept. 23, 2022).   It, therefore, added nothing to Plaintiff's knowledge of the cause of his injury and is irrelevant to the discovery rule analysis.   Similarly, Plaintiff's earnings statement and execution

of a retainer agreement contribute no additional knowledge regarding the cause of his disease. Further, simply arguing that Plaintiff and counsel discussed Plaintiff's work history on July 21, 2019, does not aid the analysis. The undisputed evidence shows that both discussed Plaintiff's work history even before he took the x-ray on February 28, 2019. Plaintiff has identified nothing new learned during their July 21, 2022 work history discussion that was unknown to them on February 28, 2019. He is not afforded the liberty to arbitrarily choose a date for counsel and him to discuss information possessed by them and thereby select the triggering date for statute of limitations clock.

¶18 Concededly, counsel must understand all relevant details of the client's injury and its cause prior to filing a complaint. However, nothing in the discovery dule requires that a plaintiff "understand" the cause of his injury. The applicable jurisprudence merely requires that the plaintiff have knowledge of the cause of his injury sufficient to trigger an investigation into the prospects of filing a lawsuit. It tolls the statute until the plaintiff knows he may have a cause of action. The limitations statute is not tolled until the plaintiff acquires all necessary information to commence a lawsuit. The Third Circuit explained this point when it interpreted the Supreme Court's ruling in United States v. Kubrick, 44 U.S. 111, (1979) stating:

> [T]he accrual date is not postponed [by the discovery rule] until the injured party knows every fact necessary to bring his action. Rather, the Court indicated that the crucial question in determining the accrual date for statute of limitations purposes was whether the injured party had sufficient notice of invasion of his legal rights to require that he

investigate and make a timely claim or risk its loss. Once the injured party is put on notice, the burden is on him to determine within the limitations period whether any party may be liable to him.

Zeleznik v. United States, 770 F.2d 20, 23 (3d Cir. 1985).   This Court concurs with the Third Circuit's rationale and hereby applies it to the discovery rule.

¶19   Next, Plaintiff attempts to push the tolling period to November 19, 2019, when he received his earnings statements from the Social Security Administration. Pl's. Opp., p 13.   Such documents, he argues, identified the companies that employed him and the years of employment which was important "because it allowed Mr. Burt and his counsel to confirm the years of potential exposure at the Alumina Refinery." Id.   Certainly, Plaintiff's earning statements would assist in ascertaining his precise dates of employment with various companies which would facilitate the filing of an adequate complaint.   However, the statements reveal nothing about an employee's work injury or the cause thereof.   They are thus irrelevant to the discovery rule tolling analysis.   Further, at the November 23, 2022 hearing, Plaintiff's counsel conceded that his earning statements were not necessary to determine the cause of his injury.

¶20   Finally, Plaintiff appears to suggest tolling continued under the discovery rule until July 2022 when Dr. John examined him, reviewed his work history, reviewed his pulmonary function test results, and connected his lung injury to a specific exposure. Pl's. Opp., pp 10-11.   This argument is flawed for two reasons. First, the issue is not when did Dr. John connect Plaintiff's injury to a specific

exposure. It is when did Plaintiff know, or should have known, that he suffered an injury and the cause thereof. In fact, Dr. John did connect Plaintiff's injury to asbestos exposure on February 28, 2019, although he did not identify the source of the exposure. As explained above, upon receipt of Dr. John's February 28, 2019 Report, Plaintiff or counsel could have easily connected his injury to asbestos exposure at the refinery where he worked. Second, if Plaintiff's injury was not connected to a specific exposure until July 2022, how was he able to file a complaint on July 15, 2021 and allege a specific source of his asbestos exposure? Plaintiff's July 2022 tolling termination argument thus lacks merit.

### 4) An Attorney-Client Relationship Existed Between Plaintiff and his Counsel as Early as February 7, 2019.

¶21 The undisputed facts establish that an attorney-client relationship existed between Plaintiff and Attorney Pate as early as February 7, 2019, if not before. Pursuant to Virgin Islands law governing the lawyer-client privilege,

> A "client" is a person, public officer or corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

5 VIC § 852(a)(1). Here, Plaintiff

a. knew, when he first reached out to Attorney Pate, that other workers had sued Hess Refinery and received money;

b. had consulted with Attorney Pate through his staff for some six months prior to issuance of the February 7, 2019 Letter;

c. discussed his work history during the consultation;

d. was advised by counsel to report for an x-ray screening to look for possible lung damage; and

e. was advised he would do a breathing test if lung damage was found to determine whether he qualified for a lawsuit.

Ex. 4, Pl's. Opp. to Mot. for Summ. J. (Burt Declaration ¶ 5, Nov. 28, 2022); Ex. 19, SUF (Pate Letter). These undisputed facts establish that Plaintiff consulted Pate's firm with a view towards obtaining professional legal services and, in fact, received professional services (i.e. guidance) regarding steps necessary to pursue a possible lawsuit. An attorney-client relationship was thus formed no later than February 7, 2019. Bluebeard's Castle v. Delmar Mktg., 1995 V.I. LEXIS 15, Civ. No. 1993-125 at *4 (Super. Ct. Feb. 7, 1995) (finding attorney-client relationship existed where client understood he would consult with counsel for the sole purpose of deciding what legal actions, if any, to take against alleged tortfeasor, though he never asked the attorney to serve as his counsel nor did the attorney offer to do so.).

¶ 22    Plaintiff disputes that any attorney-client relationship existed before July 21, 2019, when he signed a retainer agreement. In a declaration executed by his current counsel on November 1, 2022, counsel states, "at the time when my staff sent the February 7, 2019 Letter, Mr. Burt had not signed a retainer with my firm and was not my client." Pl's. Opp. to Mot. for Summ. J., n 2 (Ex. 131, Declaration of J. Russell B. Pate In Support of Opposition to Mot. for Summ. J., p 1, ¶ 4).

However, execution of a retainer or payment of a fee is not required to form an attorney-client relationship. People of the Virgin Islands v. Carty, 73 V.I. 35, 42 (Super. Ct. 2009) (stating, "an attorney-client relationship is not dependent upon the payment of a fee nor upon the execution of formal contract."). It bears noting that Plaintiff's counsel took a contrary position on several occasions by acknowledging the existence of an attorney-client relationship prior to July 21, 2019. This is evidenced by counsel's assertion of the attorney-client privilege relative to the very same February 7, 2019 Letter.[7] Beyond pointing out that no retainer was executed until July 19, 2019, Plaintiff has set forth no explanation as to why the attorney-client relationship did not exist as early as February 7, 2019. This Court is aware of none.

### 5) The Knowledge of Plaintiff's Counsel Is Imputed to Plaintiff.

¶23    Aside from Plaintiff's knowledge, his counsel also knew of the existence

---

[7] During the deposition of Dr. Andre Galiber concerning the February 7, 2019 Pate Letter, counsel for Plaintiff stated, "I just want to place an objection on the record, you know, this was a letter to Mr. Burt not to the Imaging Center: and I just want to the reserve any privilege that may be in this document and flag that for the Judge at some point." Ex. 114 (Deposition of Andre Galiber- Sept. 20, 2022) p 50:17-24. In his response to Defendants' Statement of Undisputed Fact No. 35, regarding an excerpt from the same letter, counsel stated, "undisputed, but Plaintiff objects on the basis that this letter is privileged information." SUF 35, Pl's Response. Finally, in Plaintiff's November 29, 2022 Response to Defendants' Supplemental Statement of Undisputed Facts, counsel for Plaintiff, in reference to an Application Form completed by Plaintiff before February 7, 2019, stated "Mr. Burt is waiving privilege over this document [the Application Form] alone for the limited purpose of responding to arguments made by Defendants . . . This is not a broad waiver and Mr. Burt does not waive his attorney-client or work product privileges outside of this limited waiver." Pl's. Response to Defs'. SUPP SUF, p 5, n 1. Plaintiff has thus conceded the existence of attorney-client relationship between Plaintiff and attorney Pate from at least February 7, 2019.

and cause of Plaintiff's injury as of March 18, 2019. Counsel's knowledge is imputed to Plaintiff, as a matter of law, because of the attorney-client relationship. In Arlington Funding Servs., Inc. v. Geigel, the Virgin Islands Supreme Court explained that the discovery rule operates not in a vacuum, but in conjunction with the imputed knowledge rule. 51 V.I. 118, 130 (V.I. 2009), overruled in part on other grounds by Benjamin v. AIG Ins. Co. of P.R., 56 V.I. 558, 564 (V.I. 2012). It analyzed the imputed knowledge rule after considering the Restatement (Third) of Agency, § 5.03, along with case law from Virgin Islands, state, and federal circuit courts.[8] The Supreme Court recognized that the attorney-client relationship is in fact an agent-principal relationship. Id. at 131 (citing McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 853 (3d Cir. 1996)). It held that "information an attorney receives during the scope of his representation of a client will be imputed onto that client even if the client does not have actual knowledge of that information." Id. at 131. Applying this rule in the context of the statute of limitations, the Supreme Court stated:

---

[8] This Court recognizes that the Supreme Court's decision in Geigel is a pre-banks decision and does not consider itself to be foreclosed from adopting a different common law rule. However, the Court notes that the Geigel decision was not wholly based on the application of the Restatements. The Supreme Court also considered decisions from this, as well as state and circuit courts. The imputed knowledge rule has been applied by this and other courts and is the soundest rule for the Virgin Islands. Under the circumstances, the Court does not deem it appropriate to depart from the holding in Geigel. See Gov't of the Virgin Islands v. Connor, 60 V.I. 597, 605 (V.I. 2014), n 1.

Therefore, as a general rule, the statute of limitations on a client's action will begin to run when the client's attorney knew or should have known about the circumstances giving rise to that claim, even if the client lacks knowledge of the potential claim.

Id. The Court recognized three (3) exceptions to the imputed knowledge rule. It will not apply if:

1. The fact to be imputed is not material to the agent's duties;

2. The agent acts adversely to the principal; or

3. The agent is subject to a duty to another not to disclose the fact to the principal.

Id. None of the exceptions apply here. Accordingly, Attorney Pate's knowledge regarding the existence and cause of Plaintiff's injury is imputed to Plaintiff. Pate's knowledge is reflected in his February 7, 2019 Letter to Plaintiff and the report he received from Dr. John on March 18, 2019.[9] That knowledge coupled with Plaintiff's knowledge of his work history was sufficient to inform Plaintiff that he had asbestosis and the cause thereof.

¶24　Counsel for Plaintiff admitted as much at the November 23, 2019 Hearing.

---

[9] Although an attorney-client relationship existed as early as February 7, 2019, this Court finds that the privilege was waived with respect to the February 7, 2019 Letter. This occurred when Plaintiff disclosed the letter to a third party, Dr. Coralee Lewis, on February 28, 2019, at the Imaging Center. SUF ¶ 35, Reply Ex. 124 (Deposition of Dr. Coralee Lewis – Excerpt) at 35:3-14; 5 V.I. 852(d)(9) (stating "[t]he privilege is lost if the client waives confidentiality as to one or more issues such as by disclosing privileged communications to a third party or the client or the attorney breaches a duty that is owed to each other.")

He argued that it was not until Plaintiff and his counsel met on July 21, 2019 and discussed his work history that he learned of the cause of his injury. Significantly, Plaintiff points to no new material information obtained since receipt of Dr. John's report on March 18, 2019, that contributed to his knowledge of the cause of his injury. For these reasons, Plaintiff is deemed to possess the knowledge communicated to his counsel via Dr. John's letter on March 18, 2019. See McKinney Fahie v.Ferguson, 2021 V.I. LEXIS 107, No. ST-20116-CV-638 at *2 (V.I. Super. Mar. 29, 2021) (citing Arlington Funding Servs., Inc. v. Geigel, 51 V.I. 118 (V.I. 2009) (imputing agent's knowledge to principal).

**CONCLUSION**

¶25 Viewing the pleadings, affidavits, and other evidence submitted in support of, and opposition to, the summary judgment motion in Plaintiff's favor, this Court concludes that there is no genuine issue of material fact regarding when Plaintiff's cause of action arose. As a matter of law, that date is March 18, 2019. As such, the two-year statute of limitations expired on March 18, 2021. Plaintiff had two years to investigate and assess the feasibility of filing a lawsuit. Since he did not file his complaint until July 15, 2021, it is time barred. Accordingly, the Court will grant Defendants' Motion for Summary Judgment based on the Statute of Limitations. An order consistent herewith will be entered contemporaneously.

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

**Attest:**
**TAMARA CHARLES**
CLERK OF THE COURT

_____
COURT CLERK
\_\_\_12-06-2022_____
DATE